```
                IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:                )
                                 )
DAVID & BARBARA CRAIG,           )
                                 )     CASE NO. BK04-81499
               Debtor(s).        )          A04-8066
UNITED FIRE & CASUALTY COMPANIES,)
                                 )
               Plaintiff,        )     CH. 7
                                 )
     vs.                         )
                                 )
DAVID CRAIG,                     )
                                 )
               Defendant.        )
```

ORDER

Trial was held in Omaha, Nebraska, on May 12, 2005, on the plaintiff's complaint to determine dischargeability. Thomas K. Harmon appeared for the debtor, and John P. Mullen appeared for the plaintiff.

The debtor was involved in his family's construction business. With his father, he owned Craig Industries, which was a holding company. Divisions of the company performed general contracting, residential contracting, high-rise concrete work, and roofing work. The debtor was executive vice-president of Craig Industries and president of the Craig & Son Construction division. He testified that he essentially ran the companies' day-to-day operations.

Some of the divisions of Craig Industries undertook the type of jobs for which performance bonds are required. The debtor obtained those bonds, or some of them, for the company. Specifically, he obtained a performance bond and a labor & materials bond (each in the amount of $1,445,981) in August 1996 for what was known as the Mercy Crestview project, and a performance bond and labor & materials bond (each in the amount of $780,000) in April 1997 for what was known as the Sarpy County project. United Fire & Casualty ("UF&C") was the surety on these bonds.

As a condition of issuing the bonds, UF&C required personal indemnification on behalf of the construction company. To that end, indemnity agreements were prepared and were signed in April

1996 ostensibly by Grover & Toni Craig, David & Barbara Craig, and Jeffrey & Christine Hawthorne. Grover Craig is the father of David Craig and Christine Hawthorne. UF&C's representatives were under the impression that the Hawthornes had made a capital infusion of $500,000 into the Craig companies, so that is why UF&C wanted them to indemnify the surety.

The Craig companies did not complete the Mercy Crestview or Sarpy County projects, and UF&C paid the bond claims to finish portions of the projects. When UF&C attempted to collect from the indemnitors, Dr. Hawthorne denied signing the indemnity agreement. UF&C believes the debtor, David Craig, forged Dr. Hawthorne's signature on the indemnity agreement, and therefore filed this adversary proceeding to except the debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) on the grounds that the debtor obtained money, property, and services through false pretenses, false representations, or actual fraud, or under § 523(a)(2)(B) on the grounds that he obtained such money, property and services through the use of a materially false written statement regarding his financial condition, which he made with the intent to deceive and upon which UF&C reasonably relied.

## I. Legal Standards

A.   Liability of a corporate officer

It is clearly established, in Nebraska and elsewhere, that a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates, even though his actions may be in furtherance of the corporate business. Huffman v. Poore, 569 N.W.2d 549, 558 (Neb. Ct. App. 1997) (citing 18B Am. Jur. 2d *Corporations* § 1882 at 730-32 (1985)).

The corporate veil may be pierced to hold a shareholder liable when the shareholder has used the corporation to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. Huffman, 569 N.W.2d at 557. However, when a tort action is brought against an officer or director, there is no need to pierce the corporate veil, and liability will be imposed if the elements of the tort are satisfied. Id. See also discussion in Wolf v. Walt, 247 N.W.2d 858, 865-68, 530 N.W.2d 890, 896-98 (1995).

B.   11 U.S.C. § 523(a)(2)(A)

The Bankruptcy Code prohibits debtors from discharging debts "incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." Cohen v. de la Cruz, 523 U.S. 213, 217 (1998) (internal citation omitted).

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing Thul v. Ophaug (In re Ophaug), 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995)). In Field v. Mans, the Supreme Court held that § 523(a)(2)(A) requires justifiable reliance, in which "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 71 (citing the Restatement (Second) of Torts § 545A cmt. b (1976)).

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." Moen, 238 B.R. at 791 (quoting Moodie-Yannotti v. Swan (In re Swan), 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." Id. (quoting Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. Id. (quoting Federal Trade Comm'n v. Duggan (In re Duggan), 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)).

    C.   11 U.S.C. § 523(a)(2)(B)

To except a debt from discharge under 11 U.S.C. § 523(a)(2)(B), a creditor must prove, by a preponderance of the evidence, that (1) the debtor made (2) a statement in writing (3) respecting the debtor's financial condition (4) which was materially false and (5) made with the intent to deceive, and (6) which was reasonably relied upon by the creditor. Heritage Bank of St. Joseph v. Bohr (In re Bohr), 271 B.R. 162, 167 (Bankr. W.D. Mo. 2001).

Section 523(a)(2)(B) requires a written statement respecting the debtor's financial condition. Such statements are not limited to balance sheets or other financial forms, but can include a much broader class of statements. Wallander v. Wallander (In re Wallander), ___ B.R. ___, 2005 WL 1081498, at *2 (Bankr. N.D. Iowa May 5, 2005) (citing First Nat'l Bank v. Pontow, 111 F.3d 604, 609 (8th Cir. 1997)). However, the writing must contain a statement of the debtor's "overall financial health and not a mere statement as to a single asset or liability." Wallander at *3 (quoting In re Soderlund, 197 B.R. 742, 745 (Bankr. D. Mass. 1996)).

D.   Applicable statutory section

Sections 523(a)(2)(A) and (a)(2)(B) are mutually exclusive. First Nat'l Bank of Olathe v. Pontow, 111 F.3d 604, 608 (8th Cir. 1997). Because the allegations in this case deal with allegedly forged indemnity documents regarding the surety's ability to recover in the event it had to pay a specific bond claim, rather than with the debtor's or his company's overall financial condition, it appears that § 523(a)(2)(A) is the applicable provision.

## II. Discussion

The only question at trial is whether the debtor forged Jeffrey Hawthorne's signature on the indemnity agreements. There was no dispute as to the remaining elements of § 523(a)(2)(A) – that UF&C reasonably relied on the validity of the documents and suffered a loss as a result. The evidence presented to the court regarding the likelihood of forgery by the debtor on these documents leads me to the conclusion that he is responsible for the forged signatures, and therefore for the false representations and fraud committed against UF&C.

First, local handwriting expert Sylvia Kessler testified in detail about her analysis of the signatures on the indemnity

agreements as compared to the same signatures by the debtor. She concluded that the same person wrote the handwriting exemplar which she used for comparison and signed Jeffrey Hawthorne's name on the indemnity agreements, and it was established by deposition testimony that the debtor wrote the handwriting exemplar. Her conclusions were not challenged.

Second, the deposition testimony of Jeffrey and Christine Hawthorne establishes that neither of them signed the indemnities. In fact, Jeffrey Hawthorne testified that he had no financial dealings with the Craig companies at all and had specifically asked Christine Hawthorne not to assist the companies financially. Dr. Hawthorne testified that his only occasion to discuss the companies' financial situation came in approximately 1997 or 1998 when the debtor asked him for money, but Dr. Hawthorne declined. He further testified that he did not provide a personal financial statement to the Craigs, nor did he authorize anyone to do so.

Christine Hawthorne's testimony was similar to that of her husband. She stated that she has never been financially involved in the Craig companies, nor has she participated as an officer or director. She did not provide a personal financial statement for use by the companies.

Third, the debtor testified that he does not recall asking either of the Hawthornes to sign the indemnity agreements. He also testified that he has experienced medical problems, including a stroke, in the past two or three years which have affected his memory and his ability to recall certain events and occurrences.

The debtor suggested it was possible that he could have signed Jeffrey Hawthorne's name to the agreement with Jeffrey's authorization, but he does not remember. This particular piece of testimony is simply not credible, as Jeffrey Hawthorne is a well-educated professional who could be expected to comprehend the ramifications of signing a legally binding document and would know that authorizing the debtor to sign on his behalf would not be appropriate.

The circumstantial evidence in this case leads me to the conclusion that the debtor forged Jeffrey Hawthorne's signature on the indemnity agreements in an effort to obtain the bonds necessary to cover the two jobs, which were significant to the companies' financial health. Craig Industries filed for

bankruptcy protection shortly after being unable to complete the Mercy Crestview and Sarpy County projects.

The Hawthornes' testimony is credible as to their complete lack of financial participation in the business and as to their firm denials of ever having signed the indemnity agreements.

The debtor testified that he did not know of anyone else who would have an interest in signing Dr. Hawthorne's name to the agreements, and had no explanation for how the signature came to be there. It seems reasonable to conclude that the debtor was doing everything he could to procure jobs for the company to keep it going. The company had to be bonded to obtain the Sarpy County and Mercy Crestview projects, and the only way the debtor could get bonds was by shouldering some of the risk for the surety company. Because the Craig companies lacked "true liquidity," in the words of one of the bonding agents, UF&C required personal indemnity in addition to corporate indemnity in order to issue the bonds. The debtor was aware that the Hawthornes were not interested in investing money in or taking financial responsibility for the construction company, but he nevertheless gambled on using their names and financial information to obtain the bonds.

Therefore, I find that the debtor is responsible for the forged signature on the indemnity agreements and as a result, the debt is not dischargeable.

### III. Conclusion

In the terms of § 523(a)(2)(A), the debtor falsely represented to UF&C that Jeffrey Hawthorne had signed the indemnity agreements at issue here. He knew at the time he made the representations that they were false. He made the representations deliberately and intentionally with the intent to deceive UF&C and cause it to issue the necessary bonds. UF&C reasonably relied on the indemnity agreements, issued the bonds, paid bond claims, and unsuccessfully sought to recover on the Hawthornes' indemnity agreement. As a result, UF&C still holds a debt against the debtor. That debt is excepted from discharge. Separate judgment will be entered.

IT IS ORDERED: The debt owed by the debtor to United Fire & Casualty Companies is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). A monetary judgment will be entered upon the plaintiff's submission of a proposed judgment setting out

separate amounts for actual damages, interest, and costs. Plaintiff's counsel should provide a copy of the proposed judgment to counsel for the debtor, who will have 10 days thereafter to file any specific objections to the amounts sought.

    DATED:   June 14, 2005

                                 BY THE COURT:

                                 /s/ Timothy J. Mahoney
                                 Chief Judge

Notice given by the Court to:
    Thomas K. Harmon
    *John P. Mullen
    U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.